UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD REAVES, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | CIVIL NO. 3:CV-14-1325 |
| | : | |
| WARDEN D. HUDSON, *et al.*, | : | (Judge Kosik) |
| | : | |
| Respondents | : | |

**MEMORANDUM**

## I.    Background

Petitioner, Harold Reaves, an inmate confined at the Federal Correctional
Institution at Schuylkill, Pennsylvania, is serving a life sentence imposed by the
Superior Court of the District of Columbia for first degree murder while armed and
carrying a dangerous weapon.  Before the court is his *pro se* petition for writ of
habeas corpus pursuant to 28 U.S.C. § 2241.  He proceeds *in forma pauperis* in this
matter.

In the petition, Reaves claims that the United States Parole Commission: (1)
violated the ex post facto clause of the United States Constitution by allegedly
applying the "1991 Policy Guideline and/or 2000 guidelines" when it ordered a
rehearing in five years rather than within 12 months and (2) impermissibly double-

counted the same factors to set the guideline range and to exceed it, when it considered his negative institutional conduct as part of the reasons for departing from the rehearing guidelines.  (Doc. 1, Pet. at 7, 10-11.)  He requests "a rehearing date in October 2015 as required under the 1987 D.C. Parole Regulations."  (*Id*. at 8.)  For the reasons that follow, the petition will be denied.

## II.    Standard of Review

Challenges by a petitioner in federal custody concerning parole decisions go to the execution of a sentence and are properly brought against petitioner's custodian under 28 U.S.C. § 2241.  *See Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235, 241-42 (3d Cir. 2005)(§ 2241 allows federal prisoner to challenge the execution of sentence, such as the denial of parole).

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmate of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Ellis v. Dist. of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996)(DC parole statute and regulations do not create any liberty interest in parole).  Even though an inmate has no liberty interest in parole release protected by the Due Process Clause, a fundamental due process right to be free from "capricious decision making" protects parole applicants from being denied parole for "arbitrary or constitutionally impermissible reasons."  *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).

2

A federal court's review of a decision issued by the Commission is limited to an abuse of discretion standard. *Furnari v. Warden*, 218 F.3d 250, 254 (3d Cir. 2000). The United States Court of Appeals for the Third Circuit has recognized that a federal court's review of a decision issued by the Commission is limited. *Id*. The court is not empowered to substitute its judgment for that of the Commission in evaluating the habeas petitioner's claims, unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. *Id.* "The appropriate standard of review of the Commission's findings of fact 'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir. 1976); *see also* 28 C.F.R. § 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the United States Parole Commission."). To that end, the review should consider whether the Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not based on impermissible considerations.'" *Furnari*, 218 F.3d at 254 (*quoting Zannino*, 531 F.2d at 690).

## III.   Relevant Statutory Background

In 1985, the District of Columbia (DC) Board adopted guidelines that detailed and narrowed its discretion when making parole determinations. These guidelines

were published and codified in 1987.  *See Sellmon v. Reilly*, 551 F. Supp. 2d 66, 69-71 (D.D.C. 2008)(discussing the purpose and operation of the 1987 Guidelines). Under the 1987 Guidelines, after a DC felony offender served his minimum sentence, he was eligible for parole consideration.  D.C. Mun. Regs. tit. 28 § 200.1.  Once eligible for parole, the DC Board was authorized to consider the offenders's suitability for release on parole:

> [w]henever it shall appear to the [DC Board] that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the [DC Board] may authorize his or her release on parole upon such terms and conditions as the [DC Board] shall from time to time prescribe.

D.C. Code § 24-404(a).

The 1987 Guidelines of the DC Board set forth a scoring system for use in deciding whether to grant or deny parole.  (*See* Doc. 6-3 at 36, D.C. Mun. Regs. Tit. 28, § 204.1 (1987); *Sellmon*, 551 F. Supp. 2d at 69-73; *Ellis*, 84 F.3d at 1415-17.) Under these regulations, "even if the prisoner established everything the statute required, the Board of Parole still had discretion to deny parole." *Ellis*, 84 F.3d 1415.

> In sum, the District's parole system is grounded in the exercise of discretion by the Board, with a numerical system to aid in the exercise of that discretion.  The numerical system is not a rigid formula, however, because the Board is not required to either grant or deny parole based upon the scored attained ... [T]he Board [has] authority, in unusual

4

> cases, to ignore the results of the scoring system and either grant or deny parole in the individual cases, conditioned upon the Board's setting forth in writing those factors it relied on in departing from the result indicated by the scoring system.  Therefore, because the statute and regulations vest in the Board substantial discretion in granting or denying parole ... they lack the mandatory character which the Supreme Court has found essential to claim that a regime of parole gives rise to a liberty interest.

*McRae v. Hyman*, 667 A.2d 1356, 1360-61 (D.C. 1995)(internal quotations and citations omitted).

Initially, each parole applicant is assigned a salient factor score (SFS) which serves as "one factor" in determining parole eligibility by assessing the potential risk of releasing the prisoner.  *Ellis*, 84 F.3d 1415-16; Doc. 6-3 at 36; D.C. Mun. Regs. tit. 28, § 204.2.  Six categories are then evaluated and give a numerical value, which when combined, range from 0-10.  *Id*. at 1416.[1]  The DC Board then "modifies a prisoner's risk category by adding or subtracting points for pre and post-incarcerations factors."  *Id*. at 1416.  Points are added if: (l) "[t]he prisoner's current conviction involved violence against a person, the use of a dangerous weapon, or drug distribution; or if the prisoner has two or more previous convictions for these

---

[1] The six categories considered are: (1) "Prior convictions and adjudications (Ranging from 0-3)," (2) "Prior commitments of more than thirty days (0-2)," (3) "Age at the time of the commission of the current offense (0-2)," (4) "Recent commitment-free period (0-1)," (5) "Status of the prisoner at the time of commission of the current offense (0-1), and" (6) "History of heroin or opiate dependence (0-1)." *Ellis*, 84 F.3d at 1416; Doc. 63-1 at 36, D.C. Mun. Regs. tit. 28, § 204.4.

types of crimes;" or (2) "the prisoner has committed serious disciplinary infractions."

*Id*. at 1416; Doc. 63-3 at 39-40, D.C. Mun. Regs. tit. 28, § 204.18(a)-(h).  A point is

subtracted if the prisoner "has demonstrated sustained achievement in prison

programs, industries or work assignments."  *Id*. at 1416; Doc. 63-3 at 40, § 204.18(i).

This score is then either increased or decreased in one point increments depending on

the prisoner's program achievement and institutional adjustment. *See id*. at 1416.

The application of these factors yields the offender's total point score (TPS)

which can range from 0-5.  *Id*. at 1416; Doc. 63-3 at 40, D.C. Mun. Regs. tit. 28, §

204.19.  In the case of an adult offender, a TPS of 0, 1 or 2 indicates that parole may

be granted after the initial hearing, and a score of 3 or more indicates that parole

should be denied and a rehearing scheduled.  *See* D.C. Mun. Regs. tit. 28, § 204.19.[2]

Regardless of the prisoner's TPS, "the regulations permit the Board to deviate from

the parole determination suggested by the guidelines 'in unusual circumstances'".

*Ellis*, 84 F.3d at 1416.

> The Board may, in unusual circumstances, waive the SFS
> and the pre and post incarceration factors set forth in this
> chapter to grant or deny parole to a parole candidate.  In that
> case, the Board shall specify in writing those factors which
> it used to depart from the strict application of the provisions
> of this chapter.

---

[2] In subsequent hearings, the DC Board begins with the total point score from the previous hearing.  *See* D.C. Mun. Regs. tit. 28, § 204.21.  At rehearings, adult offenders with a TPS between 0 and 3 "shall be granted parole" while those with a TPS of 4 or 5 "shall be denied" parole.  *Id*.

(Doc. 63-3 at 41, D.C. Mun. Regs. tit. 28, § 204.22.)  Appendix 2-1 listed six reasons

that the Parole Board might deny parole, despite a low total point score:

> • the offender has had repeated failures under parole
> supervision;
>
> • the instant offense(s) involve(s) on-going criminal
> behavior;
>
> • the offender has a history of repetitive, sophisticated
> criminal behavior;
>
> • the offender has an unusually extensive or serious prior
> record, including at least five felony convictions;
>
> • the instant offense(s) involve(s) unusual cruelty to
> victim(s);
>
> • the offender has engaged in repeated or extremely serious
> negative institutional behavior.

(Doc. 6-3 at 68-69; D.C. Mun. Regs. tit. 28, § 204, Appendix 2-1.)  The list in

Appendix 2-1 also contains categories for "Other" and "Other change in

circumstances."  *Id.*  The D.C. Board supplemented these appendices with an

"Addendum to Board Order", which laid out four additional factors that could justify

deviating from the numerical guidelines.  The Board identified a list of "factors

countervailing a recommendation to grant parole" to be considered at an offender's

initial and reconsideration hearings as follows:

> • the offender has had repeated failures under parole
> supervision;
>
> • the instant offense(s) involve(s) on-going criminal

behavior;

• the offender has a lengthy history of criminally-related alcohol abuse;

• the offender has a history of repetitive, sophisticated criminal behavior;

• the offender has an unusually extensive or serious prior record, including at least five felony convictions;

• the instant offense(s) involve(s) unusual cruelty to victim(s);

• the offender has engaged in repeated or extremely serious negative institutional behavior.

• the offender has a lengthy history of criminally-related substance abuse;

• the offender had the opportunity, but made little or no effort toward rehabilitation or preparation for remaining crime-free if released to the community; and

• the offender needs programs and/or rehabilitation services to minimize risk to the community when actually released to parole.

*Ellis*, 84 F.3d at 1416; *see also Sellmon*, 551 F. Supp. 2d at 69-71; D.C. Mun. Regs.

tit. 28, § 204 and Appendices 2-1 and 2-2 (1987).[3]

---

[3]  The DC Board adopted the policy guideline in 1991 (not a codified regulation) to elaborate on the terms used in the 1987 Regulations, and give greater definition of the terms, and the criteria and parameters for their usage, in parole matters.  (*See* Doc. 6-3 at 73-81.)  In addition to adding and defining additional "unusual circumstances" that would justify a departure from the action indicated by the total base point score as set forth above, the 1991 Policy Guideline also defined "negative institutional behavior" and "sustained program or work assignment

As reflected above, the DC Board retained discretion to grant or deny parole notwithstanding the result recommended by the TPS. *Ellis*, 84 F.3d at 1419 (explaining that "under the regulations, a prisoner with a low total point score shall be granted parole unless the Board, in the exercise of its discretion, believes there is some other reason for not granting him parole."); *see also* Doc. 6-3 at 41, D.C. Mun. Regs. tit. 28, § 204.22.  If parole is denied at the initial hearing or a subsequent rehearing, a "set off," or period of time an offender may remain incarcerated before being reconsidered for parole, is established by the DC Board.  While the guidelines set forth a schedule to be utilized when determining the offender's set off, based on the imposed term of imprisonment, "[t]he Board, *in its discretion*, may schedule a reconsideration date later than the prescribed set-off if one or more aggravating factors are present ...." *Hall v. Henderson*, 672 A.2d 1047, 1052 (D.C. 1996)(emphasis added); *see also* Doc. 6-3 at 30, D.C. Mun. Regs. tit. 28, § 104.11.[4]

On August 5, 1998, pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 (Revitalization Act), Pub.L. No. 105-33, §

---

achievement" in the context of initial parole hearings and reconsideration hearings. *See Sellmon*, 551 F. Supp. 2d at 71.  The 1991 Guidelines were in effect from December 16, 1991 until the DC Board issued a new policy guideline on October 23, 1995, superceding it.

[4] When a person is serving a maximum sentence of less than five years, reconsideration shall ordinarily occur within six months. *See* Doc. 6-3 at 29, D.C. Mun. Regs. tit. 28, § 104.1.  Offenders serving a maximum sentence of more than five years shall ordinarily receive rehearings within twelve months. *Id*. § 104.2.

11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a), the DC Board was abolished, and the Commission assumed jurisdiction over parole decisions for DC offenders. The Revitalization Act requires the Commission to apply the DC Board's parole criteria, rather than its own guidelines, in deciding a DC offender's parole eligibility. *See* D.C. Code § 24-131. Likewise, the regulations specify that for those DC offenders who had their initial parole hearing before August 5, 1998, "the Commission shall render its decision by reference to the guidelines of the former DC Board of Parole in effect on August 4, 1998." *See* 28 C.F.R. § 2.80(a)(4). The Commission, like the DC Board, had the authority to depart from the guidelines. *See Ellis*, 84 F.3d at 1419-20 (holding that the DC Board has discretion to depart from guidelines); *McRae*, 667 A.2d at 1357 (same).

In 2000, the Commission issued new guidelines for determining whether an inmate is eligible for parole. *See generally* 63 Fed. Reg. 39172 (July 21, 1998). The Commission applied the 2000 Guidelines "to any offender who received an initial parole hearing after August 5, 1998" but before December 4, 2000. *Sellmon*, 551 F. Supp. 2d at 72; 28 C.F.R. § 2.80(a). The *Sellmon* court discussed the many similarities between the 2000 Guidelines and the 1987 Guidelines. *Id*. at 72-73.

Like "the 1987 Regulations, the 2000 Guidelines use a scoring system to determine whether a prisoner is presumptively suitable for parole." *Id*. at 73; 28 C.F.R. § 2.80(c). In calculating the SFS, the Commission determines a parole

candidate's "degree of risk" of becoming a recidivist. *Id*. As with the 1987 Guidelines, the 2000 Guidelines determine the "type of risk" that an inmate poses "by looking at his or her history of violence, the use of a weapon, and/or death of the victim as a result of the candidate's crime." *Id*. at 73; 28 C.F.R. § 2.80(f)-(g). After calculating both the prisoner's degree and type of risk, the resulting "base point score" is converted into a "base guideline range," or a number of months that are added to the prisoner's court-imposed minimum sentence. *Id*. at 73; 28 C.F.R. § 2.80(h).

Like the 1987 Guidelines, the 2000 Guidelines also consider the parole candidate's negative institutional behavior and program achievement. However, unlike the 1987 Guidelines, once the Commission adds the base guideline range to the prisoner's minimum sentence, it also adds or subtracts months to account for negative institutional behavior or "superior" program achievement. 28 C.F.R. § 2.80(j)-(k). The Commission retains sole discretion to categorize inmate behavior as either "superior" or "non-superior," and only the former may result in a sentence reduction. 28 C.F.R. § 2.80(e). The resulting total number of months is known as the "total guideline range," which indicates the customary range of time to be served, except in unusual circumstances where the Commission may depart from the total guideline range, before release. 28 C.F.R. § 2.80(n). Under the 2000 Guidelines, a parole candidate is presumptively unsuitable for parole until he has served a period of imprisonment equal to the bottom of his total guideline range. *Sellmon*, 551 F. Supp.

2d at 73; 28 C.F.R. § 2.80(h), (i) and (l).

Finally, the 2000 Guidelines, like the 1987 Guidelines, allow the Commission to deny parole "notwithstanding the guidelines" in "unusual circumstances." *Id*.; 28 C.F.R. § 2.80(n).  Unlike the 1987 Guidelines, the 2000 Guidelines provide examples of "unusual circumstances," but they do not limit the Commission's discretion.  They instead state that the Commission may depart for any reason "not fully taken into account in the guidelines" that is "relevant to the grant or denial of parole." *Id*.; 28 C.F.R. § 2.80(n).

## IV.  Discussion

### A.    Petitioner's Incarceration/Initial Parole Hearing History

On December 18, 1992, the Superior Court for the District of Columbia imposed a life sentence on Petitioner, after he was convicted of first degree murder while armed and carrying a dangerous weapon.  (Doc. 6-3, Ex. 1, Sentence Monitoring Computation Data; Ex. 2, Prehearing Assessment; Ex. 3 Posthearing Assessment.)  On March 25, 2014, he received an initial parole hearing from the Parole Commission.  (*Id*., Exs. 2, 3.)

In considering Petitioner for parole, the Commission assigned him a total point score of 4 points, a score indicating that parole should be denied.  This score was computed as follows.  Petitioner's salient factor score (SFS) was 3.  (Doc. 6-3 at 16, Salient Factor Score Worksheet.)  This SFS score places Petitioner in the "high" risk

group and carries a score of +3 into the guideline calculation.  To this base score of

+3, 1 point was added for "type of risk" because Petitioner's offense involved violence

(murder) and weapons (use of firearm).  An additional 1 point was added for negative

institutional  behavior.[5]  One (1) point was deducted for program achievement, for a

total point score of +4 points.  Under the 1987 parole guidelines, a point score of +4

indicates that parole should be denied at the initial parole consideration and a

rehearing scheduled.  *See* Doc. 6-3 at 40, D.C. Mun. Regs. tit. 28, § 204.19.

The Commission denied parole and ordered that Petitioner receive a

reconsideration hearing in October 2019, 60 months from his parole eligibilty date of

October 18, 2014.  (*Id.*, Ex. 4, Notice of Action.)  The following reasons were

provided by the Commission for departing from the rehearing guideline, which calls

for a rehearing within 12 months in an ordinary case:

> The guidelines for the time to rehearing indicate that your next hearing
> should be scheduled within 12 months.  A departure from these
> guidelines is found warranted because the Commission finds there is a
> reasonable probability that you would not obey the law if released and
> your release would endanger the public safety.  You are a more serious
> parole risk than shown by your rehearing range because you have shown
> a propensity for ongoing and repetitive criminal behavior while confined.
> There were two federal convictions for possession of weapons and/or
> assaultive behavior that you committed while confined on this and other
> sentences.  You committed the instant offense within a few months of
> your release to a halfway house and before your actual release date on the

_____

[5] On May 24, 1994, Petitioner possessed a knife not authorized for possession
and on December 12, 2007, he possessed an unauthorized item (UNICOR bags).  (*See*
Doc. 6-3, Ex. 2 at 3.)

> prior offense. You committed this murder by going looking for the
> victim, armed with a fully automatic Uzi that you fired numerous shots
> from during the daytime when there were many witnesses present.

(Doc. 6-3 at 15.)

Petitioner now files the instant habeas corpus petition claiming that when the
Commission ordered a rehearing in 5 years rather than in 12 months, they violated the
ex post facto clause of the Constitution by applying the 1991 and/or 2000 guidelines,
as well as impermissibly double-counting the same factors to set the guideline range
and to exceed it, when it considered his negative institutional conduct as part of the
reasons for departing from the rehearing guidelines.

### B.     Ex post facto challenge

The Ex Post Facto Clause of the United States Constitution prohibits retroactive
increases in criminal punishment. U.S. Const. art. I, § 9, cl. 3. A retroactively applied
parole regulation, guideline or policy statement may violate the Ex Post Facto Clause
if it creates "a significant risk" of "a longer period of incarceration than under the
earlier rule." *Garner v. Jones*, 529 U.S. 244, 255 (2000). Thus, "determin[ing]
whether ... retroactive application of a new parole regime violates the Ex Post Facto
Clause requires a 'searching comparison' of the two parole regimes." *Sellmon*, 551 F.
Supp. 2d at 84 (*citing Fletcher v. Reilly*, 433 F.3d 867, 879 (D.C. Cir 2006)).

The "controlling inquiry" is "one of practical effect." *Fletcher*, 433 F.3d at 877.
Thus, the court "must assess the magnitude of the risk in terms of the practical effect

14

of the change in regulations on the length of a [prisoner's] incarceration." *Id.*  In other words, "plaintiffs may not prevail simply by showing facial differences between the old and new policies.  Rather[,] plaintiffs must demonstrate that the practical effect of the new policies was to substantially increase the risk that they would [each] serve lengthier terms of incarceration." *Id*. at 91.  A prisoner must adduce "some evidence" to show that the law or policy "as applied to his own sentence ... created a significant risk of increasing his punishment." *Garner*, 529 U.S. at 255.

There is no dispute that the 1987 D.C. Board guidelines apply to Petitioner since he committed his crime between March 4, 1985 (the effective date of the "1987 Guidelines" and August 4, 1998 (the last day the D.C. Board exercised parole release authority). *See Sellmon*, 551 F. Supp. 2d at 84.  Petitioner also concedes that the 1987 Regulations correctly authorized the denial of parole.  (Doc. 1 at 18.)  However, he alleges that "the Commission's application of the 1991 Policy Guidelines and/or the 2000 Guidelines to continue his rehearing date for five years–where the 1987 Regulations only authorized a one year set-off based on the factual circumstances of his particular case–violated the Ex Post Facto Clause." (Doc. 1 at 18.)  He claims his rehearing date should have been scheduled within twelve months.

Clearly, the record supports the Board's decision to deny parole.  Petitioner agrees with this much.  The Salient Factor Score of 3, as thereafter adjusted by the type of risk, negative institutional behavior and program achievement factors, yielded

a TPS of 4, justifying a presumption against parole.  Petitioner does not argue that the 1987 Guidelines were not used to determine whether he should be granted or denied parole.  In fact, the Notice of Action and all underlying paperwork associated with the Commission's denial of parole reveal that the 1987 Guidelines were, in fact, utilized.

Because the Commission decided to depart from the guideline calling for a rehearing in 12 months, Petitioner concludes that the 1987 Guidelines must not have been applied in reaching the rehearing decision.  His claim is wholly unsupported and without merit.   The Commission justified the departure on the basis that a reasonable probability existed that Petitioner would not obey the law if released, and his release would endanger the public safety.  The Commission found Petitioner to be a more serious parole risk than shown by the 12 month rehearing guideline range, because he has shown a propensity for ongoing and repetitive criminal behavior while confined. He had two federal convictions for possession of weapons and/or assaultive behavior, while he was committed on the instant and other sentences.  Moreover, the instant offense was committed within a few months of his release to a halfway house and prior to his actual release date on his prior offense.  Petitioner's current murder offense was also committed by going looking for the victim, while armed with a fully automatic weapon, from which numerous shots were fired during the daytime with many witnesses present.

Pursuant to the 1987 Guidelines, the Board may schedule a reconsideration date

16

later than the prescribed set off, if one or more aggravating factors are present, a judgment committed to the Commission's discretion.   Despite Petitioner's claims, he has no legal entitlement to a parole rehearing in twelve months, where the Commission acts within its authority in ordering a departure therefrom based on aggravating factors supported by the record.  Moreover, while Petitioner claims that the 1987 Guidelines only permit departures for one of the reasons contained in Appendix 2-1, he is mistaken.  One of the reasons listed for departing from the guidelines found at Appendix 2-1 is "other."  *Ellis*, 84 F.3d at 1416; *see also* Doc. 6-3 at 69.  In addition,  Petitioner's claim that the Commission must have applied the 1991 Policy Guideline is not logical in that the 1991 Guideline constricted the scope of the Board's discretion.  While the 1991 Guideline spelled out more of the rationale for larger set offs, the Board still retained discretion.  For these reasons, Petitioner's challenge on the basis of ex post facto is found to be without merit.

### C.    Double counting challenge

Petitioner also challenges the imposition of a 5 year rehearing date on the basis that the Commission "double-counted" because his negative institutional conduct can only be used as a basis to add a point to his score, not for any other purpose such as justification to go beyond the guidelines.  His argument is without merit for the following reasons.

If the Commission had indeed double counted, the court finds that it would have

acted improperly.  *See Harris v. Martin*, 792 F.2d 52 (3d Cir. 1986); *Duckett v. U.S. Parole Commission*, 795 F.Supp. 133 (M.D. Pa. 1992).  However, such is not the case here.  In reviewing the record, the Commission considered Petitioner's "negative institutional conduct" in the following regard.  Under "type of risk" assessment, Petitioner could receive only a maximum of +1, even though he had several negative institutional behavior infractions that could satisfy this category.  In fact, while two negative infractions were referenced by the Commission, the possession of a knife in May of 1994 and the possession of unauthorized item in November of 2007, only one was required to assess the maximum +1 point available.  (Doc. 6-3 at 14.)

However, in considering his negative conduct for purposes of departing from the rehearing guideline of 12 months, the Commission noted Petitioner had received two federal convictions for possession of weapons and/or assaultive conduct, committed while he was confined.  The two federal convictions referenced were for the May 1994 "Possession of a Knife not Authorized by Prison" and a June 1986 Assault with Intent to do Bodily Harm committed while Petitioner was at FCI-Lorton. (Doc. 6-3 at 9.)  These facts were relied upon in concluding that Petitioner is a more serious parole risk than captured by the guidelines because he has shown "*a propensity for ongoing and repetitive criminal behavior while confined.*" (*Id*. at 15.) It is not double counting for the Commission to both add a point to the point score, and also to consider the nature of the prior record as a reason for departing from the

18

guidelines, especially in light of the fact that the point score under represents the threat Petitioner poses.  A parole decision taking into account all of these factors, and which refuses to ignore any of them, does not double count. *See Duckett*, 795 F.Supp. at 137; *Bialkin v. Baer*, 719 F.2d 590 (2d Cir. 1983).  As such, his double counting argument is rejected.  An appropriate order follows.